Ludwig H. BRANDL,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee,

No. 74–2249.

United States Court of Appeals,
Sixth Circuit.

April 22, 1975.

John H. Burson, Shumaker, Loop & Kendrick, Toledo, Ohio, for appellant.

Gilbert E. Andrews, Scott P. Crampton, Richard Farber, Asst. Atty. Gen., Tax Div., Dept. of Justice, Daniel F. Ross, Washington, D. C., Robert T. Duffy, Hyattsville, Md., Meade Whitaker, Chief Counsel, I. R. S., Washington, D. C., for appellee.

Before PHILLIPS, Chief Judge, and MILLER and ENGEL, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is a taxpayer's appeal from an adverse decision of the Tax Court that the taxpayer was not entitled to an income tax deduction for travel expenses incurred during the year 1969 while away from home on business. The taxpayer, it was held, had no "home" within the meaning of the statute during the tax year.

Ludwig Brandl, the taxpayer, is an unmarried Canadian citizen of German birth who moved to the United States in 1967. In 1969 he was employed as the technical representative for the Strong Electric Company of Toledo, Ohio. This position required him to travel throughout the United States to meet with dealers handling the Strong lighting equipment. In this capacity Brandl spent approximately nine to ten months on the road during 1969. These trips were made at the direction of his employer; they usually lasted from four to six weeks; and they always terminated at the employer's office in Toledo. When in Toledo the taxpayer stayed at the house of his brother. Although he had no formal rental agreement with his brother, he did purchase groceries for the family during his stay in addition to undertaking several home improvement projects. According to Brandl, these activities were in lieu of actual rental payments. Also, the taxpayer received his mail at his brother's residence and paid Ohio state and Toledo local taxes.

For the year 1969, Strong Electric reimbursed Brandl in the amount of $8,288.68 for travel expenses. The taxpayer did not include this sum as gross income for that year and was assessed for a deficiency by the Commissioner. Before the Tax Court, Brandl asserted that the amount was fully deductible as a business expense under Section 162(a)(2) of the 1954 Code.[1]

For a traveling expense to be deductible, it must satisfy three conditions:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or

1. 26 U.S.C. § 162. Trade or business expenses
(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and . . . .

trade. Commissioner v. Flowers, 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946).

Because of the almost infinite variety of the factual situations involved, the courts have not formulated a concrete definition of the term "home" capable of universal application. In a number of cases, because of the particular facts presented, this Court has held the term to be synonymous with principal place of business. *See* Markey v. Commissioner, 490 F.2d 1249, 1253 (6th Cir. 1974); and Commissioner v. Mooneyhan, 404 F.2d 522, 528 (6th Cir. 1968), cert. den. 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969). This interpretation has resulted in denying deductions to persons choosing to reside at great distances from their places of employment,[2] and to individuals working either permanently or indefinitely away from their usual residences.[3] Recently the same "place of business" test was applied by this Court in determining the deductibility of travel expenses incurred by a taxpayer maintaining two places of employment.[4] When it was found, however, that both the place of employment and the occupation of the taxpayer were temporary, this Court treated the term "home" as being synonymous with the taxpayer's abode or place of residence.[5]

The present case is different since it raises the question whether the taxpayer has a home to be away from for the purposes of Section 162. Not long ago, we recognized that the traveling salesman situation could be an unusual one, and we commented favorably upon the Second Circuit's handling of such a case by its ruling in Rosenspan v. United States.[6] *Markey*, 490 F.2d at 1254 n. 2. Rosenspan was a jewelry salesman who worked on a commission basis for two New York City manufacturers. He spent approximately ten months traveling his sales territory and returned to New York only five or six times a year. While in New York, he would stay in hotels or motels and would work in the offices of his employers. The taxpayer acknowledged that he did not maintain a home in the usual sense of the word. Nevertheless, he argued that his home for tax purposes was New York City, the business headquarters of his employers, and hence that all the time he spent in his territory was "away from home." The Second Circuit reasoned that the deduction was designed to ease the burden on those people who had to bear the duplicate expenses of maintaining a residence and of living on the road. 438 F.2d at 912. The court held that "home" meant "home" and not "business headquarters." *Ibid.* Consequently, it was found that as Rosenspan was not confronted with duplicate expenditures, his position was no different from that of an itinerant salesman and that he was thus not entitled to the deduction under Section 162(a)(2). *Ibid.* *See* James v. United States, 308 F.2d 204 (9th Cir. 1962).

We believe that the rationale of the *Rosenspan* case is sound and should be applied in this case. The central purpose of the deduction is to allow the taxpayer credit for the additional expenses encountered when he is required to travel for business reasons. If such a traveler has a permanent residence not only must he meet its continuing maintenance expenses, but he must also pay the many expenses necessarily incurred in connection with his employment while on the road. These considerations are of critical importance in determining whether a taxpayer has a home within the meaning of Section 162(a)(2). Such objective financial criteria bear a much closer relationship to the underlying purposes of the deduction than do various other indicia of residence evidencing merely a taxpayer's subjective opinion

---

**2.** Green v. Commissioner, 298 F.2d 890 (6th Cir. 1962).

**3.** Ham v. U. S., 408 F.2d 671 (6th Cir. 1969); Commissioner v. Mooneyhan, 404 F.2d 522 (6th Cir. 1968), cert. denied, 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969).

**4.** Markey v. Commissioner, 490 F.2d 1249 (6th Cir. 1974).

**5.** Burns v. Gray, 287 F.2d 698 (6th Cir. 1961).

**6.** 438 F.2d 905 (2d Cir.), cert. denied, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971).

regarding the location of his home. *See Markey*, 490 F.2d at 1255. In the present case the taxpayer's testimony pertaining to these objective factors was vague at best. Although he testified concerning his expenditures while on the road and in Toledo, his explanations were lacking in meaningful detail.[7] The Tax Court did not err in concluding that, under the *Rosenspan* rationale, the taxpayer had failed to establish the additional burden necessary to qualify for the deduction.

In the alternative, the taxpayer contends before us that he was denied a fair hearing before the Tax Court and thus should be granted a new trial in that forum. Essentially, his grounds for remand are that his trial counsel entered into a materially false stipulation[8] and that he has discovered new evidence favorable to his cause. These contentions are asserted in the taxpayer's brief and are supported by two affidavits[9] appended thereto. However, at no time were they presented to the court below.[10] It is a well-established principle that, except in unusual circumstances, an appellate court will not deal with issues not first presented to the Tax Court for its consideration. Reeves v. Commissioner, 314 F.2d 438, 439 (6th Cir. 1963). We perceive no such exceptional circumstances in this case and hence decline to consider the issues sought to be presented in this manner.

Affirmed.

---

7. Relevant portions of the transcript are as follows:

Q Did you have any arrangement with your brother as to compensation for use of his home?

A Yes. On a very vague basis. He did not ask me to pay him rent. The same as I would not if he stays with me. However, I made myself what I figure was a fair price. The tail of another horse—by other buying groceries or helping with the house in general, buying things for the house. Or working around it. Just recently bought the house a year prior to that.

Spent my time, my vacation, to work on the house.

(Pause).

Q You would assist in the maintenance or remodeling or upkeep?

A Yes.

. . . . .

Q What type expense did you incur while traveling?

A Well, primary it has been traveling expenses connected with my car. It was my own private car, not a company's car.

The living expenses consisting of hotel rooms and meals. Telephone, business telephones. A—business conferences. Toll charges.

The parking fees. Et cetera, et cetera.

(Pause).

Q In the course of your position as manufacturer's representative, were you required to do any type entertainment as far as with customers or other clients?

A Yes. Normal entertainment. By that I mean if he—a meeting just extend over your lunch time period or possibly into an afternoon tea session.

Yes.

Q And these would also be paid?

A That would be paid by the company.

8. After the Tax Court's decision was handed down, the taxpayer sought to appeal but was forced to obtain the services of another attorney since his trial counsel indicated his reluctance to handle cases on the appellate level. The taxpayer finally secured his present counsel shortly before the expiration of time for filing a notice of appeal. His present attorney perfected this appeal but did not file a petition with the Tax Court seeking any of the post-trial remedies available to him.

9. The affidavits in question were not made a part of the trial record and are not appropriate for our consideration on appeal.

10. Rules of Practice and Procedure of the United States Tax Court:

Rule 161. Motion for reconsideration of findings or opinion

Any motion for reconsideration of an opinion or findings of fact, with or without a new or further trial, shall be filed within 30 days after the opinion has been served, unless the Court shall otherwise permit.

Rule 162. Motion to vacate or revise decision

Any motion to vacate or revise a decision, with or without a new or further trial, shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit.